UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

FAMILIES FOR FREEDOM, JANE DOE  :
MARY DOE, and JOHN DOE,         :
                                :
                  Plaintiffs,   :
                                :
            - against -         :
                                :
U.S. CUSTOMS AND BORDER         :
PROTECTION, U.S. IMMIGRATION AND :
CUSTOMS ENFORCEMENT, and U.S.   :
DEPARTMENT OF HOMELAND          :
SECURITY,                       :
                                :
                  Defendants.   :

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/11

**OPINION AND ORDER**

**10 Civ. 2705 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Families for Freedom, a non-profit advocacy organization, along with

Jane Doe, Mary Doe, and John Doe, three individuals in deportation proceedings

(collectively, "Plaintiffs"), filed suit against U.S. Customs and Border Protection

("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), and the U.S.

Department of Homeland Security ("DHS") (collectively, "Defendants"), seeking

release of certain government records pursuant to the Freedom of Information Act

("FOIA").[1]  The requested records pertain primarily to the scope and practices of

---

[1]    5 U.S.C. § 552 et seq.

CBP operations on inter-city buses and trains within the geographic area designated as the "Buffalo Sector."[2]

Defendants represented that their searches yielded certain "hits" that they nonetheless deemed unresponsive to plaintiffs' FOIA request.[3]  Plaintiffs conceded that many of those documents were nonresponsive, while contesting defendants' assertion of nonresponsiveness as to others.[4]  On August 15, 2011, after considering both parties' letter submissions, I ordered the production of those documents that I determined, based on defendants' description of the documents, were responsive to plaintiffs' FOIA request.[5]  On August 29, 2011, defendants moved for partial reconsideration of that Order.  Plaintiffs have opposed defendants' motion.  For the reasons below, defendants' request is granted in part and denied in part.

## II.   PROCEDURAL HISTORY

---

[2]      *See* First Amended Complaint ("Compl.") [Docket No. 9] ¶ 2.

[3]      *See* 8/10/11 Letter from Assistant United States Attorney David Bober, Defendants' Counsel, to the Court ("8/10/11 Def. Letter"), Ex. E to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Partial Reconsideration of the Court's August 15, 2011 Order ("Opp. Mem.").

[4]      *See* 8/11/11 Letter from Nancy Morawetz, Esq., Plaintiffs' Counsel, to the Court ("8/11/11 Pl.  Letter"), Ex. F to Opp. Mem.

[5]      8/15/11 Order [Docket No. 41].

The background and procedural history of this case was described in detail in this Court's previous decision of June 16, 2011.[6]  I describe here only the procedural history relevant to deciding the instant motion for reconsideration.

Over the course of this litigation, defendants have insisted that many of the requested documents do not exist.[7]  Skeptical of that representation, plaintiffs have sought to conduct discovery.  Recognizing that discovery in FOIA cases is the exception rather than the rule,[8] however, I instead urged defendants to conduct further searches that might be more productive.[9]  Defendants did indeed conduct further searches, but plaintiffs maintain that such searches were still inadequate.[10]  In addition, defendants have asserted that certain of the documents yielded by their searches were personal rather than agency records, while plaintiffs maintain that whether a document is an agency record is for the Court to

---

[6]     6/16/11 Opinion & Order [Docket No. 35].

[7]     *See* Opp. Mem. at 1.

[8]     *See Carney v. U.S. Department of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith,' *Safecard Servs., Inc. v. United States Sec. and Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face.").

[9]     *See* Opp. Mem. at 1-2.

[10]     Briefing on the adequacy of defendants' searches is forthcoming.

determine.[11]

At a conference on February 1, 2011, I indicated that I would be willing to review the documents that defendants deemed nonresponsive *in camera*, or to review descriptions of the documents to determine whether or not they were responsive.[12]  Instead, defendants wrote a letter to the Court on July 13, 2011, containing a very general description of why CBP had deemed the documents nonresponsive.  Defendants wrote, "the vast majority of the documents were 'false positives' – i.e., they contain words that matched the search terms but, when they were reviewed, it was apparent that they were not documents that Plaintiffs had requested."[13]  Plaintiffs argued, appropriately, that defendants' response was inadequate, as the Court had asked for a description of the particular documents, not the conclusory paragraph defendants submitted.[14]

At a conference on July 20, 2011, the Court again gave defendants the option of submitting the documents for *in camera* review or providing more detailed descriptions of the documents.[15]  On July 21, 2011, plaintiffs sent the

---

[11]    *See* Opp. Mem. at 2.

[12]    *See id.* at 3 (citing 2/1/11 Transcript of Proceedings at 22-23).

[13]    *Id.* (quoting 7/13/11 Letter from AUSA Bober to the Court).

[14]    *See id.*

[15]    *See id.* at 3-4.

Court a letter providing a description of what they believed would make a document responsive.[16]  Defendants opted to provide descriptions of the documents by letter dated August 10, 2011.[17]  Plaintiffs responded on August 11, 2011, conceding the nonresponsiveness of certain documents while stating their objections and their bases for believing that other documents were responsive.[18]  Defendants did not reply to plaintiffs' letter.[19]  On August 15, 2011, I issued an Order requiring the release of certain documents by August 29, 2011.  Instead, on that date, defendants filed the instant motion for reconsideration.

On August 30, 2011, I asked defendants to submit the contested documents for *in camera* review, along with "additional information regarding the Microsoft Word document containing a Border Patrol employee's meeting notes," specifically, "information regarding how the notes were kept and whether they were ever distributed, circulated, or sent in any fashion to any other agency employee."[20]  Defendants finally submitted the documents for *in camera* review,

---

[16]     *See id.* at 4 (citing 7/21/11 Letter from Morawetz to the Court, Ex. C to Opp. Mem.).

[17]     *See id.* (citing 8/10/11 Def. Letter).

[18]     *See id.* (citing 8/11/11 Pl. Letter).

[19]     *See id.* (quoting 8/30/11 Email from the Court to AUSA Bober, copied to Morawetz ("8/30/11 Ct. Email")).

[20]     *Id.* (quoting 8/30/11 Ct. Email).

5

and subsequently submitted a letter from counsel providing the information

requested by the Court.[21]

## III.   APPLICABLE LAW

### A.   Standard for Reconsideration

Motions for reconsideration are governed by Rule 6.3 of the Local

Rules of the United States District Courts ("Local Civil Rule 6.3") and are

committed "'to the sound discretion of the district court.'"[22]   A motion for

reconsideration is appropriate where "'the moving party can point to controlling

decisions or data that the court overlooked – matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court.'"[23]   A motion

for reconsideration may also be granted to "'correct a clear error or prevent

manifest injustice.'"[24]   The purpose of Local Civil Rule 6.3 is to "'ensure the

finality of decisions and to prevent the practice of a losing party examining a

---

[21]     *See id.*

[22]     *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61-62 (2d Cir. 1986)).

[23]     *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

[24]     *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

decision and then plugging the gaps of a lost motion with additional matters.'"[25]

Local Civil Rule 6.3 must be "narrowly construed and strictly applied so as to

avoid repetitive arguments on issues that have been considered fully by the

Court."[26]  Courts have repeatedly warned parties that motions for reconsideration

should not be made reflexively in order to reargue "'those issues already

considered when a party does not like the way the original motion was

resolved.'"[27]  A motion for reconsideration is not an "opportunity for making new

arguments that could have been previously advanced,"[28] nor is it "'a substitute for

---

[25]     *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03
Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v.
Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y.
May 31, 2001)).  *Accord Commerce Funding Corp. v. Comprehensive Habilitation
Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a
motion for reconsideration any matter that it did not raise previously to the court
on the underlying motion sought to be reconsidered.").

[26]     *United States v. Treacy*, No. 08 Cr. 0366, 2009 WL 47496, at *1
(S.D.N.Y. Jan. 8, 2009) (quotation marks omitted).  *Accord Shrader v. CSX
Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the
motion when the movant "seeks solely to relitigate an issue already decided.").

[27]     *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1
(S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001
(S.D.N.Y. 1996)).

[28]     *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d
17, 19 (S.D.N.Y. 2005).

appeal.'"[29]

## B.    FOIA

Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person."[30]  "In responding . . . to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format . . ."[31]  "[T]he term 'search' means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request."[32]

## IV.   DISCUSSION

### A.    Partial Reconsideration Is Appropriate

Plaintiffs urge, in the first instance, that the Court deny the motion on the grounds that defendants have failed to meet the standard for reconsideration.[33] Plaintiffs argue that defendants "offer no previously unavailable facts or evidence,

---

[29]    *Grand Crossing*, 2008 WL 4525400, at *4 (quoting *Morales v. Quintiles Transnational Corp.,* 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998)).

[30]    5 U.S.C. § 552(a)(3)(A).

[31]    *Id.* § 552(a)(3)(C).

[32]    *Id.* § 552(a)(3)(D).

[33]    *See* Opp. Mem. at 5-6.

and do not demonstrate that the Court has overlooked the arguments they presented during litigation."[34]  Plaintiffs posit further that the motion for reconsideration "is merely a transparent attempt to pursue theories that Defendants failed to present properly to the Court during litigation."[35]

Defendants counter that

[t]he Court's order to produce the documents in question did not come after extensive briefing and argument, or even anything that would suffice as an appellate record; rather the sole record the Court had before it was one letter in which the Government (pursuant to Court order) provided descriptions of forty-one 'hits' and attachments falling into eighteen different categories[.][36]

Plaintiffs' frustration is understandable.  This litigation has dragged on for far too long, and obtaining information from defendants has – to put it charitably – not been easy.  However, while defendants have had ample *time* to present the arguments they now make, it is less clear that they have had the opportunity to do so.  Certainly, defendants have written letters to the Court in which they have failed to make such arguments, and they have repeatedly ignored the Court's request for *in camera* review of the documents or for detailed

---

[34]     *Id.* at 6.

[35]     *Id.* at 7.

[36]     Reply Memorandum of Law in Support of Defendants' Motion for Partial Reconsideration of the Court's August 15, 2011 Order ("Reply Mem") at 1.

descriptions.  Nonetheless, this is the first point at which the Court has ordered

formal briefing on the issue of responsiveness.  Thus, in the interests of both

correcting material error and preventing clear injustice, it is appropriate to consider

defendants' arguments, even if they were never fully presented prior to the motion

for reconsideration.  I will now consider the responsiveness of each set of disputed

documents, based on my *in camera* review, as well as the arguments of counsel.

**B.    Emails with the Subject Heading "Faxing of I-213s" Are Not Responsive to Plaintiffs' FOIA Requests**

As described by defendants, these documents consist of "[t]wo email

chains with the subject heading 'faxing of I-213[s]'. . . . inform[ing] various

employees in Buffalo Sector that they were no longer required to fax I-213s on a

daily basis."[37]  Plaintiffs argue that the documents are responsive insofar as "[t]hey

are related to the ongoing monitoring of arrest report information and therefore

relate to the FOIA request for information on performance and expectations

(4/2010 CBP, ¶[¶] 13, 14)."[38]  Defendants fail to directly respond to plaintiffs'

argument, and instead argue that the documents are not responsive to other

---

[37]    Opp. Mem. at 10 (quoting 8/10/11 Letter from Defendants to the Court).

[38]    *Id.* (quoting 8/11/11 Letter from Plaintiffs to the Court).

components of plaintiffs' FOIA request.[39]  Having now had the opportunity to view

the documents *in camera*, I no longer believe that they are responsive to plaintiffs'

FOIA request.

Plaintiffs argue that the documents are responsive to two components

of their FOIA request:

> (13) Any documents that contain any information regarding *arrest quotas, targets, goals and expectations* that BP officers operating in the Rochester BP Station and the Buffalo BP Sector were required to meet for the years 2003, 2004, 2005, 2006, 2007, 2008, and 2009.
> (14) *Performance review standards* for BP officers operating in the Rochester BP Station and the Buffalo BP Sector for the years 2003, 2004, 2005, 2006, 2007, 2008 and 2009.[40]

Plaintiffs now argue that "documents that monitor arrest information are related to

expectations about arrests."[41]  Leaving aside the confusing grammatical

formulation of "documents that monitor . . . information," I do not agree that

documents that address purely administrative details of conveying information

regarding arrests – as is now clear to me after reviewing the documents – are

encompassed in plaintiffs' request for "any information regarding arrest . . .

---

[39]     *See* Memorandum of Law in Support of Defendants' Motion for Partial Reconsideration of the Court's August 15, 2011 Order ("Def. Mem.") at 2.

[40]     4/2/10 FOIA Request, Ex. O to Compl. at 2 (emphasis added).

[41]     Opp. Mem. at 11.

expectations."  If plaintiffs did mean to include such documents, I do not find that their request "reasonably describe[s]" the records they sought, and I decline to find that defendants should have somehow divined plaintiffs' intent.[42]  I therefore withdraw that portion of the August 15, 2011 Order that directed defendants to release the two email strings with the subject heading "Faxing of 213s."

### C.  Emails with the Subject Heading "Fiscal Year 2010 Cash Award Targets" Are Not Responsive to Plaintiffs' FOIA Requests

Defendants have described these documents as "giv[ing] information to the stations within Buffalo Sector about how much money each will be allocated to give cash awards to employees who demonstrate excellent performance in their job duties."[43]  Plaintiffs argue that the documents directly relate to their request for "documents related to performance standards and expectations."[44]  They add that the "document finally brings to light the existence of a cash reward program that creates incentives based on standards of performance for CBP officers."[45]

Plaintiffs may be correct that these documents are evidence that "there was a program for evaluating performance that necessarily conveys expectations

---

[42]    5 U.S.C. § 552(a)(3)(A).

[43]    Opp. Mem. at 12 (quoting 8/10/11 Def. Letter).

[44]    *Id.* (quoting 8/11/11 Pl. Letter).

[45]    *Id*. at 13.

about performance."[46]  However, having reviewed the documents *in camera*, I

conclude that *these* are not the program documents that convey expectations about

performance in a manner that would be responsive to plaintiffs' FOIA request.

These documents are, as defendants have maintained, administrative and fiscal.

They do not convey any substantive information about "arrest . . . expectations"[47]

or "performance . . . standards."[48]  They merely set out deadlines, procedures, and

figures.  Furthermore, the documents suggest that the cash awards may have been

available to reward the superior work of *any* CBP employee, including those

whose job tasks have nothing to do with making arrests, such as a secretary or

janitor.  I therefore withdraw that portion of the August 15, 2011 Order that

directed defendants to release the emails with the subject heading "Fiscal Year

2010 Cash Award Targets."

    Plaintiffs may well be right that the existence of these documents

strongly suggests that there are other "documents about this program that *would*

*have* been responsive to Plaintiffs' request about expectations,"[49] as it is very

---

[46]    *Id.*

[47]    4/2/10 FOIA Request ¶ 13.

[48]    *Id.* ¶ 14.

[49]    Opp. Mem. at 13 (emphasis added).

13

difficult to believe that these documents are "the only one[s] that exist[] with respect to the cash reward program."[50]  Plaintiffs may wish to make this argument when they brief the adequacy of defendants' search.

**D.    Emails with Subject Heading "RFI Tasking" Are Responsive to Plaintiffs' FOIA Request**

This email chain consists of an "original email . . . request[ing] official definitions of 'transportation check' and 'transit nodes,' and also request[ing] certain transportation check apprehension statistics," followed by emails containing "followup questions, requests for clarification, and similar work-related internal communications."[51]  Defendants have produced to plaintiffs redacted copies of the email attachments, which contain statistics, but argue that the emails themselves are not responsive because they contain "no arrest statistics, staffing levels, information regarding arrest quotas, performance standards, or the like."[52]

Plaintiffs argue that the email chains are directly responsive because they are "from the CBP Deputy Chief of Staff and directly address apprehension

---

[50]    *Id.*

[51]    Def. Mem. at 4.

[52]    *Id.*

statistics related to transportation checks."[53]  Further, "[t]hey are directly relevant to our request for statistical information since they explain the categorization of the statistics.  (4/2010 request to CBP ¶[¶] 2, 3).  They are also directly relevant to our request for information on expectations, since they show particular attention to transportation arrests. (4/2010 request to CBP, ¶[¶] 13, 14)."[54]

I find that defendants have inappropriately separated "parent-child" pairs by withholding the ostensibly nonresponsive "parent" while producing the responsive "child."  In so doing, defendants have created an artificial distinction between the attachments, which contain the statistics, and the emails, which solicit, provide, define, categorize, and otherwise discuss those same statistics.  Context matters.  The attachments can only be fully understood and evaluated when read in the context of the emails to which they are attached.  That is the way they were sent and the way they were received.  It is also the way in which they should be produced.  Accordingly, I find that the emails are responsive to plaintiffs' FOIA request for statistical information.  I therefore reaffirm that portion of the August 15, 2011 Order that directed defendants to produce the email chains with the subject heading "RFI Tasking" to plaintiffs.

---

[53]     Opp. Mem. at 14 (quoting 8/11/11 Pl. Letter).

[54]     *Id.*

Furthermore, plaintiffs correctly note that the existence of these documents belies defendants' earlier, always dubious claim that statistics are not collected and kept at the national level.[55]  Plaintiffs may wish to raise this issue in their motion on the adequacy of the search.

### E.    DOJ Memorandum Is Responsive to Plaintiffs' FOIA Request

This document is a "memorandum from December 2009 authored by an Assistant United States Attorney in the Western District of New York to the chief of the office's civil division, opining on the scope of potential liability of Border Patrol agents performing searches aboard Amtrak trains."[56]  Plaintiffs argue that the letter is "responsive to our request for documents related to standards governing the conduct of CBP officers during transportation arrests."[57]  In their motion to reconsider, defendants have once again disregarded plaintiffs' basis for claiming responsiveness, arguing that "it is difficult to see how it could possibly qualify as an agreement, understanding, or communication between Border Patrol and Amtrak."[58]

---

[55]    *See id.* at 15.

[56]    *Id.* (quoting 8/10/11 Def. Letter).

[57]    *Id.* (quoting 8/11/11 Pl. Letter).

[58]    *Id*. at 16 (quoting Def. Mem. at 5).

I find that this document is responsive to plaintiffs' request for "[a]ny materials concerning the standards that apply to the conduct of CBP officers at the border as well as in the interior of the United States."[59]  I therefore reaffirm the portion of the August 15, 2011 Order that directed defendants to produce the DOJ memorandum.  I am certain – as plaintiffs have suggested – that defendants will assert one or more FOIA exemptions over this memorandum.  Any such assertion must be made by October 7, 2011.

**F.   Meeting Notes Are Agency Records And Are Responsive to Plaintiffs' FOIA Request**

This document is "[a] Microsoft Word document containing notes from a meeting that took place between Border Patrol and Amtrak Police personnel in March 2008."[60]  Plaintiffs argue that it is "directly responsive to our request for communications . . . . [I]f there was an in person meeting, there were communications and those communications were memorialized in this set of notes. The notes may also include agreements or understandings."[61]  Defendants argue first, that the document is not an agency record, because it is "merely the notes of a

---

[59]   4/2/10 FOIA Request ¶ 20.

[60]   Opp. Mem. at 16 (quoting 8/10/11 Def. Letter).

[61]   *Id.* (quoting 8/11/11 Pl. Letter).

meeting made by one employee."[62]  Second, defendants argue that "even if the

notes were an agency record, they are not an understanding, agreement, or

communication between Border Patrol and Amtrak."[63]

      Defendants are wrong on both scores.  *First*, I find that the notes are

an agency record under the totality of the circumstances standard that the Second

Circuit adopted in *Grand Central Partnership v. Cuomo*.[64]  The relevant factors in

that test are:

> (i) the circumstances that led to the creation (or
> "generation") of the document; (ii) the purpose for which
> the document was created; (iii) the document's actual use,
> including "the extent to which the creator of the document
> and other employees acting within the scope of their
> employment relied upon the document to carry out the
> business of the agency;" and (iv) the maintenance of the
> document would be considered to determine whether a
> document is an "agency record" and not an employee's
> personal record.[65]

      I find that the circumstances that led to the creation of the document in

question are clear: the notes were taken by an Assistant Chief Border Patrol Agent

---

[62]     Def. Mem. at 5.

[63]     *Id.*

[64]     166 F.3d 473, 479 (2d Cir. 1999) (citing *Bureau of National Affairs v. United States Department of Justice,* 742 F.2d 1484 (D.C. Cir. 1984)).

[65]     *Grand Cent. P'ship*, 166 F.3d at 479 (quoting *Bureau of Nat'l Affairs*, 742 F.2d at 1492-93).

during a meeting between CBP and Amtrak at a time when CBP's statistics reveal that nearly two-thirds of all CBP arrests in Rochester Station occurred on trains and buses.[66]   The purpose for which the document was created is also clear: to memorialize the discussion and outcomes of the meeting.   The document takes the form of meeting minutes, of the sort that are commonly produced following business meetings.

The document's actual use is less clear, although plaintiffs make a compelling argument that "an agency supervisor's notes of a meeting between the agency and an organization it collaborated with to 'routinely inspect' trains . . . almost certainly formed the basis for a number of directives (whether oral or written) issued to his employees[.]"[67]   The Second Circuit has emphasized the significance of this factor, noting "[t]he importance of a court's evaluation of the *use* to which such documents were and might be put by the agency and its staff cannot be overestimated."[68]

My *in camera* review of the document persuades me that this document was likely intended for some official agency use.   The document is not

---

[66]     *See* Opp. Mem. at 18 (citing Declaration of Morawetz, Ex. G to Opp. Mem., ¶ 3).

[67]     *Id.*

[68]     *Grand Cent. P'ship*, 166 F.3d at 480 (emphasis in original).

the computerized equivalent of scribbled notes – unlabeled, unformatted, and replete with abbreviations and incomplete sentences – which would suggest that the notes were intended only for the author's own use.[69]  On the contrary, the document is labeled, the date is written out, the full names of the individuals in attendance are listed along with their titles and affiliations, there are section headings, every sentence is complete, and the document is formatted neatly.  Every indication is that this is a document that the author spent some time producing for use by other agency personnel, strongly tipping the balance toward it being an agency record.

As for maintenance of the document, defendants have represented that the notes were "generated by one employee and maintained by him exclusively on the [personal drive] of his desktop and were not filed as part of an official Agency file or distributed through normal Agency channels."[70]  Defendants have further represented that "[t]he Agency has searched the emails and hard drives of the other Border Patrol personnel who attended the meeting and there is no evidence that the

---

[69]     *Cf. Sibille v. Federal Reserve Bank*, 770 F. Supp. 134, 138 (S.D.N.Y. 1991) (finding handwritten notes that only partially reflected conversations, in which employee made no effort to complete omissions, that were kept in a locked drawer, and that had never been reviewed by anyone other than employee, were created by employee "for his own personal convenience" and thus were not "agency records" under FOIA).

[70]     9/9/11 Letter from AUSA Bober to the Court at 1.

notes were sent to them."[71]

   As plaintiffs point out, this information was presented in the form of a letter from counsel rather than a sworn affidavit by the document's author or other agency representative.  Defendants have indicated that they did not understand the Court's request to be for an affidavit, but they are willing to obtain one.[72] Although defendants are correct that the Court only requested "additional information," and did not ask for an affidavit per se, defendants bear the burden "to demonstrate . . . that the materials sought are not 'agency records.'"[73]  It is not a court's responsibility to inform counsel of the agency's legal burden.  As long ago as January 28, 2011, defendants were on notice that plaintiffs rejected their argument that the documents in question were personal rather than agency records.[74]  Defendants have had ample time in which to substantiate their argument that these documents are not agency records.  I am simply not willing to delay decision in order to give defendants yet *another* opportunity to present arguments

---

[71]  *Id.*

[72]  Reply Mem. at 6.

[73]  *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989).

[74]  *See* 1/28/11 Letter from Morawetz to the Court ("1/28/11 Pl. Letter"), Ex. A to Opp. Mem., at 5-6 (citing *Bureau of National Affairs*, 742 F.2d at 1492-94; *Grand Cent. P'ship*, 166 F.3d at 480-81; *Sibille*, 770 F. Supp. at 138).

or evidence that they could easily have presented months ago.  Furthermore, even if defendants were to submit an affidavit making the same representations that appear in counsel's letter, that would not tip the balance in the "totality of the circumstances" analysis, given my findings as to the other factors.  Therefore, I find that this document is an agency record.

  *Second*, I find that the document is clearly responsive to plaintiffs' FOIA request.  It memorializes oral understandings, agreements, and communications.  Once again, defendants have long been on notice that plaintiffs intended their request for "agreements, understandings, or communications"[75] to include communications that were never reduced to written form.[76]  I have no doubt that defendants will assert FOIA exemptions over this document, which must be done with specificity by October 7, 2011.

## V. CONCLUSION

  It appears that defendants have produced as few documents as they could possibly produce to plaintiffs without serious consequences.  Even more troubling, they have *admitted to the existence* of as few documents as they could possibly get away with.  Defendants' approach frustrates plaintiffs, frustrates the

---

[75]  4/2/10 FOIA Request ¶ 18.

[76]  *See* 1/28/11 Pl. Letter (citing 1/4/11 Transcript of Proceedings at 3-4; 1/3/11 Plaintiffs' Letter at 8-9; 10/29/11 Plaintiffs' Letter at 12).

Court, and frustrates the purpose of the Freedom of Information Act.

Defendants are ordered to produce additional documents consistent with this Order by October 7, 2011. Any documents over which defendants assert exemptions must be produced in redacted form with the relevant FOIA exemptions indicated with specificity by that date. A conference is scheduled for 4 p.m. on Wednesday, October 5, 2011 to discuss the briefing schedules for the parties' summary judgment motions on the adequacy of the search and for the parties' summary judgment motions on FOIA exemptions over any and all documents that were not addressed in the last round of briefing on that issue. The Clerk of the Court is directed to close this motion [Docket No. 46].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 30, 2011

23

**-Appearances-**

**For Plaintiffs:**

Nancy Babette Morawetz, Esq.
Washington Square Legal Services, Inc.
245 Sullivan Street
New York, New York 10012

**For Defendants:**

David Bober
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York 10007