UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

FAMILIES FOR FREEDOM, JANE DOE
MARY DOE, and JOHN DOE,

     **Plaintiffs,**

   - against -

UNITED STATES CUSTOMS AND BORDER
PROTECTION, UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT, and UNITED STATES
 DEPARTMENT OF HOMELAND
SECURITY,

     **Defendants.**

-------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**OPINION AND ORDER**

**10 Civ. 2705 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

    Families for Freedom, a non-profit advocacy organization, along with Jane Doe, Mary Doe, and John Doe, three individuals in deportation proceedings, bring suit against United States Customs and Border Protection ("CBP"), United States Immigration and Customs Enforcement, and United States Department of Homeland Security, seeking release of certain government records pursuant to the Freedom of Information Act ("FOIA").[1] The requested records pertain primarily to the scope and practices of CBP operations on inter-city buses and trains, and

---

[1]  5 U.S.C. § 552 *et seq.*

1

plaintiffs have focused particular attention on the geographic area designated as the "Buffalo Sector."[2]  Plaintiffs now move for summary judgment on the adequacy of the defendants' search and seek limited discovery in order to facilitate a reasonable search.[3]  Defendants do not oppose plaintiffs' motion for summary judgment. Instead, they ask that plaintiffs' request for discovery be denied and that a decision on the motion be held in abeyance while CBP reviews and processes thousands of additional potentially responsive documents.[4]  For the reasons stated below, plaintiffs' motion for summary judgment and for relief through limited discovery is granted.

## II.   BACKGROUND

The background and procedural history of this case was described in detail in this Court's decision of June 16, 2011.[5]  I describe here only the procedural history relevant to deciding the instant motion.  On February 26, 2009,

---

[2]      See First Amended Complaint ¶ 2.

[3]      See Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment on the Adequacy of Defendants' Search and Relief Through Targeted Discovery ("Pl. Mem.").

[4]      See Memorandum of Law in Response to Plaintiffs' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Discovery ("Def. Mem.") at 8.

[5]      See Families for Freedom v. United States Customs & Border Protection, 797 F. Supp. 2d 375 (S.D.N.Y. 2011)  ("Families I").

2

plaintiffs submitted an initial FOIA request to CBP.  On April 2, 2010, plaintiffs

submitted a second FOIA request to CBP.  On May 21, 2010, plaintiffs filed their

First Amended Complaint to compel CBP's compliance with their FOIA request.

Between September 2010 and February 2011 the parties argued over the adequacy

of CBP's search.[6]  In order to establish the adequacy of their search, defendants

submitted a total of five sworn declarations from Edward X. Castillo and Gregory

Barbagallo, who were responsible for the agency's search in Washington, D.C. and

Buffalo, respectively.[7]  On February 8, 2011, I denied plaintiffs' request for a

deposition on the adequacy of defendants' search, holding that the Castillo and

Barbagallo declarations "set forth relatively detailed and nonconclusory facts

indicating that the agency's search was reasonably calculated to discover the

requested documents."[8]  Nevertheless, I ordered the agency to undertake additional

---

[6]     *See* Litigation Timeline, Ex. A to Pl. Mem.

[7]     *See* Litigation Timeline; 10/22/10 Declaration of Edward X. Castillo
("First Castillo Decl."), Assistant Chief for the United States Border Patrol, Ex. F
to Pl. Mem.; 3/15/11 Declaration of Edward X. Castillo ("Second Castillo Decl."),
Ex. G to Pl. Mem.; 12/16/10 Declaration of Gregory Barbagallo ("First Barbagallo
Decl."), Assistant Chief Patrol Agent for the United States Border Patrol, Ex. H to
Pl. Mem.; 12/30/10 Declaration of Gregory Barbagallo ("Second Barbagallo
Decl."), Ex. I to Pl. Mem.; 1/21/11 Declaration of Gregory Barbagallo ("Third
Barbagallo Decl."), Ex. J to Pl. Mem.

[8]     February 8, 2011 Order [Docket No. 29] at 1-2 (quotation marks
omitted).

targeted searches. In September 2011, I summarized the dispute as follows:

> defendants have insisted that many of the requested documents
> do not exist.  Skeptical of that representation, plaintiffs have
> sought to conduct discovery.  Recognizing that discovery in
> FOIA cases is the exception rather than the rule, however, I
> instead urged defendants to conduct further searches that might
> be more productive.  Defendants did indeed conduct further
> searches, but plaintiffs maintain that such searches were still
> inadequate.[9]

Plaintiffs have been particularly concerned about the lack of
specificity regarding the defendants' use of search terms.  For example, although
the Second Castillo Declaration and Third Barbagallo Declaration both listed many
terms that were used to search for documents in various hard drives, shared drives,
and email archives, they did not specify whether the searches were limited to the
titles of documents and the subject lines of emails, or whether the searches also
examined the full text of the documents.[10]  The declarations did not explain
whether the texts of PDFs were searched or exactly how the search terms were
combined.

Some of the statements in defendants' early declarations have

---

[9]     *Families for Freedom v. United States Customs & Border
Protection*, No. 10 Civ. 2705, 2011 WL 4599592 (S.D.N.Y. Sept. 30, 2011)
("*Families II*").

[10]     *See* Pl. Mem. at 21; Second Castillo Decl. ¶ 3; Third Barbagallo Decl.
¶ 3.

subsequently been proven untrue, either by documents that were uncovered or by later declarations that repudiated previous statements.  For example, Castillo initially said that "CBP does not produce reports that distinguish between arrests made on trains and buses and arrests made elsewhere."[11]  But defendants later disclosed hundreds of pages of reports, produced on a daily basis since 2003, that do make such a distinction.[12]  Additionally, defendants revealed that CBP does compile transportation arrest statistics that include such categories.  As I explained in September, "the existence of [the compilations] belies defendants' earlier, always dubious claim that statistics are not collected and kept at the national level."[13]

In his second declaration, Castillo said that "U.S. Border Patrol Chief of Staff Robert Lewandowski ('Chief Lewandowski') performed a search, using the aforementioned terms, on his hard drive, including all archived folders in Microsoft Outlook."[14]  However, defendants have now acknowledged that in August 2011, approximately five months after Castillo's second declaration,

---

[11]     First Castillo Decl. ¶ 13.

[12]     *See* First Barbagallo Decl. ¶ 5.

[13]     *Families II*, 2011 WL 4599592, at *5.

[14]     Second Castillo Decl. ¶ 2.

Lewandowski "discovered that his search of his archived e-mail messages did not produce e-mails which included terms that he had searched for on his archived e-mail system on or about March 2011."[15]  This error was partially due to the fact that Lewandowski's email archives had not been transferred to his new computer.

Defendants have now submitted a sixth declaration – this time by a member of CBP's eDiscovery team – describing the agency's search for responsive records.[16]  This declaration lays out in greater detail the structure of CBP's email archiving system and the search methods that defendants can and are using in order to respond to plaintiffs' FOIA request.  However, it still does not fully describe whose email archives are being searched, over what time periods, using which search terms and methods.  Nor does it address file storage systems other than email.  As plaintiffs point out, search results will change dramatically depending on which logical connectives – such as "and," "or," "w/ 10," – are used.  In order to determine adequacy, it is not enough to know the search terms. The method in which they are combined and deployed is central to the inquiry.

### III.   LEGAL STANDARD

---

[15]     Declaration of Elaine Dismuke ("Dismuke Decl."), member of the Enterprise Networks & Technology Support Team in CPB's Office of Information and Technology ¶ 11.

[16]     *See generally* Dismuke Decl.

### A.   FOIA and Summary Judgment

Under FOIA, agencies must conduct an adequate search using "methods reasonably calculated to produce documents responsive to the FOIA request."[17]  "An agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents."[18]

FOIA cases are generally resolved on motions for summary judgment.[19]  Summary judgment in the FOIA context, as in any other, is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[20]  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit under the governing law.'"[21]  "In ruling on a motion for summary

---

[17]   *Amnesty Int'l USA v. Central Intelligence Agency*, 728 F. Supp. 2d 479, 497 (S.D.N.Y. 2010) (citation omitted).

[18]   *Id*. (quotation and citation omitted).

[19]   *See Bloomberg L.P. v. Board of Governors of the Fed. Reserve Sys*., 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009).

[20]   Fed. R. Civ. P. 56(c).

[21]   *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

7

judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party."[22]

As the Second Circuit has explained,

[i]n order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate . . . . Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search . . . are sufficient to sustain the agency's burden. . . [and] are accorded a presumption of good faith. . . .[A]ccordingly, discovery relating to the agency's search . . . generally is unnecessary if the agency's submissions are adequate on their face.[23]

However, "a court should not, of course, cut off discovery before a proper record has been developed; for example, where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory."[24]  Plaintiffs may obtain discovery if they can show "bad faith on the part of the agency sufficient to impugn the agency's affidavits . . . or provide some tangible evidence . . . that summary judgment [on behalf of

---

[22]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

[23]    *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (quotations and citations omitted).

[24]    *Exxon Corp. v. Federal Trade Comm'n*, 466 F. Supp. 1088, 1094 (D.D.C. 1978).

defendants] is otherwise inappropriate."[25]   As in other contexts, the district court

"has broad discretion to manage the scope of discovery in FOIA cases."[26]

## IV.   DISCUSSION

Defendants do not oppose plaintiffs' motion for summary judgment

on the adequacy of their search.   Recognizing that their search has been inadequate,

they ask the Court to hold in abeyance a decision on plaintiffs' motion while CBP

completes its searches.[27]

Defendants argue that because the Court previously found the Castillo

and Barbagallo declarations sufficient, plaintiffs must now show bad faith on the

part of the agency in order to obtain discovery.   They cite to the Second Circuit's

statement that "to justify discovery once the agency has satisfied its burden, the

plaintiff must make a showing of bad faith on the part of the agency sufficient to

impugn the agency's affidavits or declarations," but they ignore the second half of

---

[25]      *Carney*, 19 F.3d at 812.

[26]      *Baker & Hostetler LLP v. United States Dep't of Commerce*, 473 F.3d
312 (D.C. Cir. 2006).   *Accord SafeCard Servs., Inc. v. Securities & Exch. Comm'n*,
926 F.2d 1197, 1200 (D.C. Cir. 1991); *El Badrawi v. Department of Homeland
Sec.*, 583 F. Supp. 2d 285, 321 (D. Conn. 2008).

[27]      Def. Mem. at 8; Dismuke Decl. ¶ 15 ("I am currently running these
searches for Mr. Lewandowski and other Border Patrol employees in order to
capture any e-mails messages [sic] that may be responsive to the Plaintiffs' FOIA
request.").

that sentence, which says that discovery is also available if plaintiffs "provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate."[28]

*First*, because the agency *has not* satisfied its burden, a showing of bad faith is not necessary.  It now acknowledges that its previous searches were insufficient – for example, they did not perform a proper search of Lewandowski's email archives – and that its earlier declarations misrepresented the scope of those searches.  In February 2011, I found that the declarations were sufficient because I accorded them the presumption of good faith that is appropriate in such contexts.[29] But the accuracy of those declarations has been undercut by evidence in the record, including the agency's latest declaration.

*Second*, there is tangible evidence in the record that establishes that the agency has not performed an adequate search.  Plaintiffs' second FOIA request was made on April 2, 2010.  That was nearly twenty-one months ago.  The agency has still not completed what it considers to be an adequate search.  The agency's untimely response is inexcusable and inadequate as a matter of law.

The Dismuke Declaration does not convince me that the agency's

---

[28]     Def. Mem. at 7; *Carney*, 19 F.3d at 812.

[29]     *See Carney*, 19 F.3d at 812.

current search is adequate.  It does not explain exactly which files and storage systems are being searched and exactly how that search is being performed.  In order to ascertain the adequacy of the search, plaintiffs and the Court must be given a precise description of the methods and scope of the agency's search.

For over a year, plaintiffs have sought discovery, arguing that it will allow them to efficiently identify the appropriate file systems for a reasonable and adequate search and to determine whether the agency's methods have been reasonably calculated to produce responsive documents.  Defendants have resisted, insisting that they have satisfied or promptly will satisfy their obligations.  I have repeatedly granted defendants' request for more time and for more and better declarations. But they still have not complied with FOIA's requirements.  After nearly two years of inadequate searches, six sworn declarations, numerous letters and briefs and in-person conferences, the Court's patience has worn out.  The defendants' delay is antithetical to both the Freedom of Information Act and the Federal Rules of Civil Procedure.

## V.    CONCLUSION

For the reasons explained above, plaintiffs' motion for summary judgment is granted.  Plaintiffs are instructed to submit a brief letter to the Court describing precisely what limited discovery they believe is appropriate.  The Clerk

11

of the Court is instructed to close this motion [Docket No. 61].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           December 27, 2011

12

**-Appearances-**

**For Plaintiffs:**

Nancy Morawetz, Esq.
Washington Square Legal Services, Inc.
245 Sullivan Street
New York, New York 10012
(212) 998-6430

**For Defendants:**

David Bober
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York 10007
(212) 637-2718